United States District Court
Southern District of Texas

**ENTERED**

June 21, 2024

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| EUGENIO FERNANDEZ MENDEZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | CIVIL ACTION NO. 7:23-CV-241 |
| VS. | § | |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION

Petitioner Eugenio Fernandez Mendez, a state prisoner proceeding pro se, initiated this action in July 2023 by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) In January 2003—more than twenty (20) years before Petitioner filed this action—he was convicted of first-degree felony murder and was sentenced to a term of 99 years imprisonment. In seeking federal habeas corpus relief, Petitioner raises several claims; including his assertion that his due process rights were violated during his jury trial, ineffective assistance of trial counsel, and abuse of discretion by the trial court. Respondent has moved to dismiss Petitioner's § 2254 state habeas petition, contending that all of the claims in the petition are time barred. (Docket No. 7.) Petitioner filed a response to Respondent's motion to dismiss. (Docket No. 9.)

After carefully considering the pleadings in this case, the state court record, and the applicable law, the undersigned concludes that this action should be dismissed. As explained further below, Petitioner filed this federal habeas action long after the applicable one-year limitations period expired, and the circumstances here do not qualify for either statutory or equitable tolling. Accordingly, it is recommended that Petitioner's § 2254 petition for writ of

habeas corpus be denied, that Respondent's motion to dismiss be granted, and that this action be dismissed as untimely.

## I.  BACKGROUND[1]

### A.  Underlying Conviction

On July 15, 2002, a grand jury in Hidalgo County, Texas, indicted Petitioner for the offense of first-degree felony murder.  The indictment alleged that Petitioner "did then there intentionally and knowingly cause the death of an individual . . . by strangling her with his hands."[2]  (Docket No. 6-7, at 53.)  Petitioner pleaded not guilty to the indictment and proceeded to trial.  (*Id.* at 54.) Ultimately, on January 14, 2003, the jury found—beyond a reasonable doubt—that Petitioner was guilty of murder.  (*Id.* at 54, 73.)  The same day, the jury assessed Petitioner's punishment at 99 years imprisonment.  (*Id.* at 54-55; Docket No. 6-16, at 27.)

Petitioner appealed his conviction and sentence, arguing that his trial attorney rendered ineffective assistance of counsel in various ways and that the evidence presented at trial was

---

[1] The facts and procedural history set out in the next two sections are taken from the State Court Record filed in this case and the documents submitted by Petitioner and Respondent.  (*See* Docket Nos. 1, 6, 7.)

[2] On May 4, 2002, one day after Petitioner strangled his wife to death, he made a "Statement of Accused" in which he explained the details surrounding the heinous murder.  (Docket No. 6-7, at 89.)  According to Petitioner, after spending the night out drinking and dancing with his wife, they began arguing when they returned home.  (*Id.* at 90.)  At some point, Petitioner got a razorblade, cut his own arm several times, and threatened to kill himself.  (*Id.*)  Petitioner's wife then encouraged him to kill himself.  (*Id.*)  He responded by grabbing her by the throat with both of his hands and "squeezing." (*Id.*)  She responded by kicking Petitioner but he "kept on squeezing [until] she passed out." (*Id.*)  After she would not wake up, he drove her car to the store to buy cigarettes.  (*Id.*)  He returned home and when he noticed that she was not breathing, he "starting doing CPR on her." (*Id.*)  When he could not revive her, he left the home to look for a police officer.  (*Id.*)  After he found a "cop . . . by the movie theater in McAllen," he "told him what happened and told him that [his] wife was dead and that [he] had choked her." (*Id.*)

factually insufficient to support his conviction for murder.[3]  *Mendez v. State*, No. 13-03-127-CR, 2005 WL 1845632, at *1 (Tex. App.—Corpus Christi, Aug. 4, 2005) (pet. ref'd).  However, on August 4, 2005, the Thirteenth Court of Appeals of Texas affirmed his conviction.  *Mendez*, 2005 WL 1845632, at *1, 4.

**B.    State Habeas Applications and Federal Claims**

On September 10, 2007, over four years after Petitioner was sentenced, he filed his first state application for writ of habeas corpus.  (Docket No. 6-7, at 7, 23, 25.)  In his state writ, Petitioner argued—among other things—that he received ineffective assistance of trial and appellate counsel, district court and appellate court error, that his conviction was based on perjured testimony, and that there was insufficient evidence to support his conviction.  (*Id.* at 12-23.)  On April 22, 2009, the Texas Court of Criminal Appeals denied Petitioner's state habeas application "without written order on findings of trial court without hearing."[4]  (*Id.* at 2.)

Approximately four years later, on January 5, 2013, Petitioner filed a "Motion to Compel" in the Texas Court of Criminal Appeals, which was treated as a writ of mandamus.  (Docket No. 6-11, at 2-5.)  In his motion/writ, Petitioner requested that the Court "compel Laura Hinojosa [the] district court clerk" to forward a copy of his indictment "so he can correct the wrong information in his travel card."  (*Id.* at 3.)  On January 30, 2013, the Texas Court of Criminal Appeals denied Petitioner's motion/writ "without written order."  (*Id.* at 2.)

---

[3] On appeal, Petitioner argued that his trial attorney rendered ineffective assistance of counsel by his failure to: 1) request a limiting instruction; 2) raise a Rule 403 objection; and 3) file a motion to suppress.  *Mendez*, 2005 WL 1845632, at *2-3.

[4] On July 28, 2008, while his first state application for writ of habeas corpus was still pending, Petitioner filed a hand-written notice with the Texas Court of Criminal Appeals, which was treated as a writ of mandamus.  (Docket No. 6-3, at 1-3.)  In his writ of mandamus, Petitioner advised the Court that he had previously filed a state habeas application; however, he was informed that "the district clerk had [lost his] application."  (*Id.* at 3.)  On August 20, 2008, the Texas Court of Criminal Appeals denied Petitioner's writ "without written order."  (*Id.* at 2.)

On May 23, 2022, over thirteen years after filing his first state application for writ of habeas corpus, Petitioner filed his second state habeas application.  (Docket No. 6-16, at 47, 62, 65.)  In his second state writ, Petitioner argued that his due process rights were violated at trial due to prosecutorial misconduct, that the trial court abused its discretion, and that his trial attorney rendered ineffective assistance of counsel.  (*Id.* at 52-56.)  On October 12, 2022, the Texas Court of Criminal Appeals denied Petitioner's second state habeas application "without written order . . . as a subsequent application."[5]  (Docket No. 6-14, at 1-3 (citing TEX. CODE CRIM. PROC. Art. 11.07, Sec. 4(a)-(c).))

On July 24, 2023,[6] Petitioner filed the instant federal petition for habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Docket No. 1, at 10, 15.)  In his federal petition, Petitioner challenges his conviction arguing many of the same claims that he previously asserted in his state habeas applications.  (*Compare* Docket No. 1, ¶ 12, *with* Docket No. 6-7, at 7, *and* Docket No. 6-16, at 47.)  Specifically, he now argues the following: 1) that he was denied due process based on prosecutorial misconduct; 2) ineffective assistance of trial counsel; and 3) abuse of discretion by the trial court.  (Docket No. 1, ¶ 20.)  In addition, Petitioner filed a brief in support of his claims. (*See id*. at 17-32.)

---

[5]  On August 28, 2022, while his second state application for writ of habeas corpus was still pending, Petitioner filed a "Motion for Mandamus" with the Texas Court of Criminal Appeals, which was treated as a writ of mandamus.  (Docket Nos. 6-12, 6-13.)  In his writ of mandamus, Petitioner requested that the District Attorney's office be compelled to submit a response to his second state habeas application.  (Docket No. 6-13, at 1-2.)  On September 28, 2022, the Texas Court of Criminal Appeals denied Petitioner's writ "without written order."  (Docket No. 6-12.)

[6]  This is the date that Petitioner signed his federal habeas petition, which is the earliest possible date that it could be considered filed.  *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) ("[A] habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing.").

In answer to the Petition, Respondent filed a motion to dismiss on the ground that all of claims in Petitioner's "federal petition must be dismissed with prejudice because it is barred by the AEDPA statute of limitations."  (Docket No. 7, at 1.)  Specifically, Respondent argues that Petitioner "missed the deadline" to file his federal § 2254 petitioner "by over sixteen years."  (*Id.* at 6.)  Respondent also asserts that Petitioner's claims are not subject to statutory or equitable tolling.[7]  (*Id.* at 6-8.)

Petitioner filed a response to Respondent's motion to dismiss, in which he argues that he is entitled to equitable tolling.  (Docket No. 9.)  He explains that he "has tried to obtain[ ] a copy of his transcripts from his trial attorney" but his attorney "never provided [him] with any documents concerning his trial."  (*Id.* at 1.)  Petitioner alleges that he has been attempting to obtain transcripts to support his various pleadings since as early as 2007.  (*See* Docket No. 6-7, at 21; *see also* Docket No. 9, at 2.)   According to Petitioner, in 2022 he was finally "able to buy the transcripts" himself.  (Docket No. 9, at 3.)

## II.  ANALYSIS

Petitions for habeas corpus relief filed in federal court after April 24, 1996, are subject to review under the amendments to the federal habeas corpus statutes as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA established a one-year period for filing habeas corpus petitions by persons in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).[8]  In most

---

[7] In addition, "should this court overrule this request to dismiss the instant federal petition as barred by the statute of limitations, [Respondent] reserves his right to raise and argue exhaustion of administrative remedies and the procedural default doctrine related to failure to exhaust." (Docket No. 7, at 4.)

[8] The full text of the AEDPA limitations provision reads as follows:

cases, the one-year period of limitation runs from the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A).

Judgment was entered in Petitioner's case on January 14, 2003, and he timely filed a direct appeal. *See* TEX. R. APP. P. 26.2(a)(1) (notice of appeal timely filed 30 days after the entry of sentence); (*see* Docket No. 6-16, at 9 ("Motion to Appoint Appellate Attorney" filed).) His direct appeal was pending until August 4, 2005, when the Thirteenth Court of Appeals rejected Petitioner's claims and affirmed his conviction. *Mendez v. State*, No. 13-03-127-CR, 2005 WL 1845632, at *1 (Tex. App.—Corpus Christi, 2005) (pet. ref'd). Petitioner filed a petition for discretionary review to the Texas Court of Criminal Appeals, which was refused on February 8, 2006. Therefore, Petitioner's conviction became final on May 9, 2006, when the time for seeking

---

**(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C.A. § 2244(d).

further review in the U.S. Supreme Court expired.  *Roberts v. Cockrell*, 319 F.3d 690, 693-95 (5th

Cir. 2003) (finality determined by when the time for filing further appeals expires, which includes

"the ninety-day period to seek further review with the Supreme Court").

Absent some form of tolling, the AEDPA one-year limitations period expired on May 9,

2007.  Because Petitioner did not file his federal habeas petition until July 24, 2023, this action

was filed over sixteen (16) years too late.[9]  As noted, Petitioner contends that he should be entitled

to equitable tolling.  (Docket No. 9.)  Given Petitioner's pro se status, and in an abundance of

caution, the possibility of both statutory and equitable tolling will be considered.

**A.**     **Statutory Tolling**

Section 2244(d)(2) provides that the one-year limitations period is tolled during the time

in which "a properly filed application for State post-conviction or other collateral review . . . is

pending."  28 U.S.C. § 2244(d)(2).  As such, Petitioner's post-conviction applications and other

relevant collateral filings will be evaluated to determine if they tolled the limitations period.

Petitioner filed three relevant filings in the state collateral proceedings, which were pending

during the following periods:

1)     First state habeas application: September 10, 2007, to April 22, 2009 (591 days)

2)     Writ of Mandamus: January 5, 2013, to January 30, 2013 (26 days)

3)     Second state habeas application: May 23, 2022, to October 12, 2022 (143 Days)

However, neither Petitioner's state habeas applications, nor his writ of mandamus, tolled

the limitations period.  Petitioner did not file the first of those documents (first state habeas

application) until September 10, 2007, which was about four months after the limitations period

_____

[9] As explained previously, July 24, 2023, is the earliest date that the petition could be
considered filed.  *See supra* n.6.

7

had run.  In addition, Petitioner's writ of mandamus and second state habeas application were filed approximately six (6) years and fifteen (15) years after the limitations period had run, respectively. Petitioner's state filings cannot toll the one-year limitations period because it had already expired before those proceedings began.  *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (holding that the "state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until after the period of limitation had expired").  Because the limitations period was not tolled by these filings, Petitioner's § 2254 petition is barred by the AEDPA statute of limitations.

## B.    Equitable Tolling

Because the one-year AEDPA limitations period is not jurisdictional, there is the possibility that it may be equitably tolled.  *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012).  "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland*, 560 U.S. at 649.  In *Holland*, the Supreme Court stressed that "the circumstances of a case must be 'extraordinary' before equitable tolling can be applied," and that this determination is "made on a case-by-case basis."  *Id.* at 650, 652.  The Fifth Circuit has explained that "equitable tolling is warranted only in 'situations where the plaintiff is actively misled by the defendant ... or is prevented in some extraordinary way from asserting his rights.'"  *Jones v. Stephens*, 541 F. App'x 499, 503 (5th Cir. 2013) (quoting *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002)).  The record reflects no such extraordinary circumstances present here.

As noted, Petitioner argues that he should be entitled to equitable tolling.  (Docket No. 9.) The basis for his assertion is that he "has tried to obtain[ ] a copy of his transcripts from his trial attorney," but his attorney failed to provide them as requested.  (*Id.* at 1.)  He also asserts that court

staff "time and time again" denied his requests for trial transcripts.  (Docket No. 1, ¶ 26.)  To be fair, according to Petitioner, he has been attempting to obtain transcripts to support his various pleadings since as early as 2007.  (*See* Docket No. 6-7, at 21 ("the court has denied him all the motions to view the trial transcripts").)  It was not until 2022 that he was finally "able to buy the transcripts" himself.  (Docket No. 9, at 3.)

On the other hand, Respondent argues that there are no "rare and exceptional circumstance[s]" present in Petitioner's case "that merit[ ] equitable tolling."  (Docket No. 7, at 7.) Specifically, Respondent contends that Petitioner was neither "actively misled" nor was he "prevented in some extraordinary way from asserting his rights" here.  (*Id.*)  Finally, Respondent argues that Petitioner has also failed to establish "that he in fact needed the transcript to file his federal petition," and also that the record "certainly shows a failure to diligently pursue relief." (*Id.* at 8.)  Respondent is correct.

To begin with, here, Petitioner's own assertions confirm that he was not "actively misled" regarding the trial transcripts, nor was he "prevented" from obtaining them.  Each time Petitioner requested copies of the transcripts he was "denied" copies.  For example:

- "the court has denied him all the motions to view the trial transcripts";

- "trial staff had denied [him] time and time again to obtain a copy"; and

- "the court, the trial attorney, the appellate attorney . . . all denied me a copy."

(*See* Docket No. 1, ¶ 26; Docket No. 6-7, at 21.)  He also makes clear that he was repeatedly informed of the correct procedure to obtain the transcripts on his own.  (*See* Docket No. 1, ¶ 26; Docket No. 9, at 1.)  Consistent with this, in 2022 Petitioner "was able to buy the transcripts." (Docket No. 9, at 3.)

In any event, equitable tolling "is not intended for those who sleep on their rights." *Manning*, 688 F.3d at 183 (quoting *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010)).  Here, none of Petitioner's state habeas applications, nor his federal petition, were timely filed. Furthermore, as Respondent points out, after receiving the transcripts (sometime in 2022) Petitioner still waited eight (8) months (at a minimum) before filing his federal petition.  (*See* Docket No. 7, at 7 (citing *Smith v. Cain*, No. 12-1014, 2014 WL 2898457, at *5 (E.D. La., June 26, 2014) (equitable tolling not warranted based on a delay of more than six months after receiving transcripts)); *see also Gonzalez v. Wilkinson*, 269 F. App'x 481, 485-86 (5th Cir. 2008).  In addition, upon review of Petitioner's state and federal habeas claims it does not appear that the lack of trial transcripts impeded the timely filing of those pleadings.  *See Brown v. Cain*, 112 F. Supp. 2d 585, 587 (E.D. La. 2000) (equitable tolling not warranted where petitioner failed to show that the transcripts were required).

Finally, as noted, Petitioner's conviction became final on May 9, 2006.  Assuming for the sake of argument that his state habeas applications and writ of mandamus, which collectively were pending 760 days, tolled the limitations period (which they did not), that would move the finality of his conviction to June 9, 2008.  Yet he still waited until July 24, 2023—over fifteen (15) years— to file his federal § 2254 petition.  At that point, the statute of limitations had already expired long before.  *See Manning v. Epps*, 688 F.3d 177, 185-86 (5th Cir. 2012) (finding that the petitioner did not act diligently when he waited 19 months after he knew his conviction became final); *Scott*, 227 F.3d at 263 (holding that the "state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until after the period of limitation had expired").  The record shows that Petitioner failed to pursue his rights diligently.

Because this case presents no extraordinary circumstances and because Petitioner did not act promptly to preserve his rights, equitable tolling does not apply.  As such, Petitioner's federal habeas claims are time barred and should be dismissed.

### III.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Respondent's Motion to Dismiss (Docket No. 7) be GRANTED, that Petitioner's § 2254 habeas petition (Docket No. 1) be DENIED, and that this action be DISMISSED.  For the reasons discussed below, it is further recommended that Petitioner be denied a certificate of appealability.

### CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, the recently-amended § 2254 Rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, RULES GOVERNING SECTION 2254 PROCEEDINGS.  Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); s*ee also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard

to a COA determination in the context of a habeas corpus proceeding). An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329. As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's § 2254 claims should be dismissed on procedural grounds. For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable the conclusion that all of Petitioner's claims are barred by the AEDPA one-year limitations period. Accordingly, Petitioner is not entitled to a COA.

## NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to Petitioner and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on June 20, 2024.

_____
Nadia S. Medrano
UNITED STATES MAGISTRATE JUDGE